**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GO NEW YORK TOURS, INC. d/b/a "TOPVIEW SIGHTSEEING",

Plaintiff,

–against–

AURORA TOURISM SERVICES, LLC d/b/a "NY ICONIC TOURS" AND "NY ICONIC CRUISES" and OLUWABAMISE L. JEGEDE,

Defendants.

1:22-cv-10633 (RA)(JW)

**DECLARATION OF MAURICE N. ROSS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**MAURICE N. ROSS,** an attorney duly licensed to practice law in the Courts of the State of New York, affirms under penalty of perjury that the following statements are true:

1. I am a partner of the law firm Barton LLP, attorneys for Plaintiff Go New York Tours, Inc. ("Go New York" or "Plaintiff") in the instant proceeding. I have a place of business at 711 Third Avenue, 14th Floor, New York, New York 10017. My firm has represented Go New York for several years.

2. I respectfully submit this Declaration and supporting proof in support of Plaintiff's motions for a temporary restraining order restraining and enjoining Defendants Aurora Tourism Services, LLC d/b/a "NY Iconic Tours" And "NY Iconic Cruises" ("Iconic") and Oluwabamise L. Jegede ("Jegede") (collectively, "Defendants") from the following for fourteen (14) days, and for such further period as may be provided by order of the Court:

(i) immediately ceasing and desisting Iconic buses from parking, stopping, or otherwise loitering in the bus stops assigned to TopView by the New York City Department of Transportation (the "DOT") and for which TopView holds permits as identified in **Schedule A** to the Declaration of Asen Kostadinov, sworn to on January 3, 2023 (the "Kostadinov Decl."); [1]

(ii) immediately ceasing and desisting Iconic buses from loading and unloading passengers within 100 feet of the TopView Bus Stops;

(iii) immediately ceasing and desisting from directly or indirectly infringing in any manner the mark "TOPVIEW", Registration Number 87617729 (the "Registered Mark") or any other intellectual property belonging to TopView;

(iv) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from claiming that they work for or are affiliated with TopView;

(v) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from advertising, marketing, promoting, distributing, displaying, and/or otherwise infringing TopView's intellectual property including its Registered Mark to cause persons to purchase tickets for Iconic sightseeing tours;

(vi) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from using any TopView materials and/or any reproduction, counterfeit, copy or colorable imitation of TopView's terms of service, website, brochures, rack cards, handouts, maps, signs, clothing or any other branded materials (the "Counterfeit Materials") in any manner including, but not limited to, to cause confusion, cause mistake and/or to deceive members of the trade and/or public as to the affiliation, connection or association of any product or service offered by Iconic including, but not limited to, double-decker bus tours, with TopView's products or services;

(vii) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from falsely advising any customers or potential customers that any ticket that they purchase from Iconic can be used to ride TopView tour buses or boats;

---

[1] The bus stops assigned to TopView by the DOT as set forth in Schedule A are herein referred to as "TopView's Bus Stops".

(viii) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from using any false designation of origin or false deception, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or public as to the affiliation, connection or association of any product or service offered by Iconic including, but not limited to, double-decker bus tours, with TopView's products or services;

(ix) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants to stop using any TopView materials and/or any reproduction, counterfeit, copy or colorable imitation of the Counterfeit Materials to fraudulently induce potential customers and/or customers to buy tickets from Iconic for double-decker bus tours or any products or services offered for sale by Iconic;

(x) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from wearing TopView branding clothing, counterfeit TopView clothing, or clothing that is substantially similar to TopView's branded clothing and thus likely to cause customer confusion;

(xi) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from placing false advertisements or links on third party websites such as Groupon, Google and Viator that misleads consumers into thinking that they are purchasing tickets for TopView tours;

(xii) immediately removing all false advertisements and links that are misleading consumers into thinking that they are purchasing tickets for TopView tours when in fact they are purchasing tickets from all websites owned and/or maintained by Iconic;

(xiii) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from misleading customers into believing that they are or that they have purchased tickets from TopView;

(xiv) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants to stop telling customers that complain about Iconic's products or services to direct any complaints or concerns that they have regarding those products or services to TopView;

(xv) immediately ceasing and desisting from employing ticket sellers who are not licensed by the New York City Department of Consumer Affairs;

(xvi) immediately removing infringing content from Iconic's websites that copies TopView including, but not limited to, TopView's Registered Mark, terms of service, maps, images, copy and/or brochures;

(xvii) immediately cease and desist from any other activity that may harm TopView's reputation;

(xviii) immediately post disclaimers in bold prominent letters on your websites, tickets, marketing materials and advertisements that Iconic is not associated or affiliated with TopView;

(xix) immediately ordering all employees, agents and/or persons otherwise working for or affiliated with Defendants from secreting, concealing, destroying, altering, transferring or otherwise disposing of any of the Counterfeit Materials and/or any computer files, data, business records, documents or other records or evidence relating to TopView; and/or

(xx) knowingly instructing any other person or business entity from engaging in any of the activities referred to in subparagraphs (i) – (xix).

3. I also respectfully submit this Declaration and supporting proof in support of Plaintiff's motions for issuance of an order to show cause as to why a preliminary injunction should not issue permanently restraining and enjoining Defendants from engaging in any of the activities set forth in Paragraph 1, subparts (i) – (xx).

4. I also respectfully submit this Declaration in support of: (i) an expedited preliminary injunction hearing; (ii) order authorizing expedited discovery; (iii) an asset restraining order against Defendants; and (iv) such other and further relief as the Court may deem proper.

5. On October 31, 2022, I sent a letter regarding a "Demand to Cease and Desist from Violations of Intellectual Property Rights and Unfair Trade Practices" to Defendants. A true and

correct copy of that letter is attached hereto as **Exhibit 1**. I sent the letter via e-mail and Federal Express.

6. On November 1, 2022, Plaintiff received proof of successful delivery of said Cease and Desist letter from Federal Express, and true and correct copies of the proof of service are attached hereto as **Exhibit 2.**

7. Defendants did not respond to the letter.

8. On November 29, 2022, I sent a letter to Groupon, Inc. on behalf of TopView demanding that Groupon remove or modify published advertisements for "NY Iconic Tours" and "NY Iconic Cruises". A true and correct copy of that letter is attached hereto as **Exhibit 3.**

9. On December 16, 2022, TopView commenced an action against Iconic and Jegede in this Court. A true and correct copy of the Complaint is annexed hereto as **Exhibit 4**.

10. After the Complaint was filed and the Summonses issued, the process server retained by my firm attempted to serve Mr. Jegede at the address that was listed for Aurora with the Division of Corporations of New York Secretary of State. That address was 22 E. Clinton Avenue, Irvington, NY 10533 (the "Irvington Address"). The Irvington Address is located in a residential hamlet of Westchester County. The residents of that address were a family that had purchased property previously rented by Mr. Jegede. They advised us that Mr. Jegede had been evicted.

11. After we attempted service at the 22 E. Clinton Avenue address, the address listed with the Division of Corporations of New York Secretary of State changed from the Irvington Address to 103 Westerly Street, Yonkers, New York, NY 10704.

12. On December 27, 2022, I received a call from Mr. Jegede on my mobile phone. He called me from the phone number: (929) 353-0455.

13. Mr. Jegede advised me that he received TopView's Complaint. He said that the allegations were false and that the Complaint was full of grammatical errors. He asked me how long I have been practicing law. Mr. Jegede also advised me that he went to the London School of Economics. He said that his lawyer was on vacation so he wanted to speak to me about how this dispute could be resolved.

14. I advised Mr. Jegede that TopView has evidence, including photographs, that Iconic was selling tickets for buses while pretending to be affiliated with TopView by holding TopView signs and showing tourists TopView brochures.

15. Mr. Jegede asked me if I also represented Big Bus. I told him that Iconic's misconduct was harming the entire tour bus industry.

16. Mr. Jegede responded by stating that he had no employees. He said his company was just him and his wife. He then told me that he has "lots of brochures at home" and "I can use them for whatever I want."

17. Mr. Jegede then said: "You're not going to shut down my company. I'm going to shut down TopView." He also yelled: "If you go to court, I'm going to make sure you burn in hell."

18. Groupon informed me by e-mail that it had removed the words "Top View" from Iconic's advertising and that otherwise its investigation into Iconic's conduct was ongoing. A copy of this e-mail is attached hereto as **Exhibit 5**.

Dated: New York, New York
January 3, 2023

**/s/ Maurice N. Ross**
**MAURICE N. ROSS**