# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GO NEW YORK TOURS, INC. d/b/a "TOPVIEW SIGHTSEEING",<br><br>Plaintiff,<br><br>v.<br><br>AURORA TOURISM SERVICES, LLC d/b/a "NY ICONIC TOURS" AND "NY ICONIC CRUISES" and OLUWABAMISE L. JEGEDE,<br><br>Defendant. | **Civil Action No. ____**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Go New York Tours, Inc., which does business as "TopView Sightseeing" ("Plaintiff" or "TopView"), for its Complaint against defendant Aurora Tourism Services, LLC d/b/a "NY Iconic Tours" and "New York Iconic Cruises" ("Iconic") and Oluwabamise L. Jegede (collectively "Defendants"), alleges as follows:

## THE NATURE OF ACTION

1. Plaintiff TopView offers "hop on, hop off" double-decker sightseeing tour bus services, using the trademark and accompanying logo for "TOPVIEW" brand (hereinafter the "Registered Mark").

2. TopView's first use of the TopView mark in commerce was no later than November 22, 2016. TopView has used the TopView mark continuously in commerce since at least November 22, 2016. TopView continues to offer "hop on, hop off" double-decker sightseeing tour bus services under the TopView mark.

3. On September 21, 20179, TopView applied to the United States Patent and Trademark Office for the "TOPVIEW" trademark, which was registered on July 24, 2018,

Registration Number 87617729, in Class 39, for "[t]ransportation of passengers by land via bus, and water via boat; sightseeing services, namely, providing transport via bus and via boat for sightseeing tours; travel tours services, namely providing transport for travel tours."

4. Defendants have used the TOPVIEW Mark and/or the confusingly similar "TopView" in commerce in offering its hop-on hop-off double-decker sightseeing bus tours, in violation of federal and state law.

5. Defendants' use of the TOPVIEW Mark and/or the confusingly similar "Top View" is without Plaintiff's consent.

6. Defendants' unlawful conduct has caused and will continue to cause serious and irreparable harm to Plaintiff. Consumers are likely to be confused as to a perceived affiliation, connection, association, sponsorship, endorsement, approval or permission between Plaintiff and Iconic. Iconic's conduct is likely to dilute the distinctive and source-identifying quality of Plaintiff's Mark and to damage, erode and diminish its economic value, which Plaintiff alone has the right to commercially exploit.

7. Plaintiff seeks injunctive and monetary relief against Iconic's acts of federal trademark infringement, unfair competition, and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; related acts of trademark infringement and unlawful deceptive business acts and practices under New York law, including N.Y. Gen. Bus. L. §§ 133 and 349; and common law.

**THE PARTIES**

8. Plaintiff TopView is a New York corporation with its principal place of business located at 2 East 42nd Street, New York, New York 10017.

9. Upon information and belief, Defendant Iconic is a New York corporation which

conducts its business almost entirely within the borough of Manhattan, in New York City, New York, while maintaining offices at 22 East Clinton Avenue, Irvington NY 10533.

10. Upon information and belief, Defendant Oluwabamise L. Jegede is an individual residing at 22 East Clinton Avenue, Irvington, NY 10533..

**JURISDICTION AND VENUE**

11. This Court has jurisdiction under Section 30 of the Lanham Act, 15 U.S.C. § 1221; under Sections 1331, 1338(a) and (b) and 1367(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and (b) and 1367(a) and under Sections 2201 and 2202 of the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. 1367(a).

12. Upon information and belief, this Court has personal jurisdiction over Defendants based upon their contacts with this forum, including that they is domiciled here and regularly and intentionally do business here, as well as the fact that they committed acts giving rise to this lawsuit here.

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because Defendants regularly transact business in this district and are subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

**GENERAL ALLEGATIONS AND FACTS**

**I. TopView's Tour Bus Operations.**

14. TopView is the owner of the federally registered trademark for the mark "TOPVIEW", Registration Number 87617729 (the "Registered Mark"). A true and correct copy

of the Registered Mark from the United States Patent and Trademark Office is attached hereto as **Exhibit 1**.

15. Plaintiff's first use in commerce of the Registered Mark was November 22, 2016. Since then Plaintiff has used the TopView mark regularly and consistently in commerce to promote and sell hop-on, hop-off double-decker sightseeing bus tours in New York City, in other parts of the country and worldwide.

16. TopView is one of two companies operating in New York City that operate legitimate "hop-on, hop-off" double-decker sightseeing tour buses. TopView operates double-decker tourist buses in New York City under the TopView brand.

17. Double-decker tour buses carry passengers to various tourist attractions on specific routes throughout New York City. The only other company that offers such tours is Taxi Tours, Inc. d/b/a "Big Bus Tours" ("Big Bus").

18. The double-decker tour bus industry is subject to regulation by the New York City Department of Transportation (the "DOT"). The DOT assigns TopView and Big Bus certain, sought-after stops near tourist attractions where customers can "hop on" and "hop off" the buses during tours of New York City.

19. TopView's bus stops have been approved by the DOT. The DOT has issued over forty (40) permits to TopView for assigned bus stops. The permit number and the location of TopView's assigned bus stops are identified in an official, published NYC Streets Permit Management System. The NYC Streets Permit Management System also identifies permits that have been issued to other bus companies, such as Big Bus, in various approved locations (referred to herein as the "DOT Approved Bus Stops"). According to the current NYC Streets

Permit Management System, no permits have been issued to Aurora Tourism Services, LLC, NY Iconic Tours, NY Iconic Cruises, and/or Oluwabamise L. Jegede.

20. TopView's buses are "open air" on the top level of the bus to provide a unique sightseeing tour bus experience to its customers. The bottom level of the bus is enclosed and has large windows.

21. TopView's double-decker tour buses travel in different "loops" around New York City. TopView's fleet of more than thirty (30) buses run nearly around the clock, seven days a week throughout New York City.

22. The bus locations around New York City at which passengers can "hop-on" and "hop-off" TopView's or Big Bus's buses are highly sought after. Specific locations for these bus stops are assigned to TopView and its only major competitor, Big Bus, by the New York City Department of Transportation (the "DOT"). It is critical to these bus companies' operations that the bus stops assigned to them are kept clear for their buses.

23. If these designated stops are blocked by other vehicles, including unauthorized tour buses, these companies cannot keep their buses running on a set time schedule. Providing quick, timely and continuous bus service to its customers so that they can "hop-on and hop off" its fleet on continuously running double-decker tour bus operations is critical to TopView's success.

24. The peak seasons for double-decker sightseeing tour buses are summer, winter holidays, and other calendar and school holidays. Additionally, days with dry, favorable weather are usually the most popular with customers.

25. Passengers who purchase a ticket for TopView's "hop-on, hop-off" bus tours are able to start their tour at a specified location and then "hop off" the bus to visit iconic sites and

tourist attractions along a bus's route, such as the Statute of Liberty, the Empire State Building, the Metropolitan Museum of Art, and Rockefeller Center. Passengers can then "hop back on" another TopView bus from the locations of their choice without waiting for lengthy time periods between the sites and attractions that they choose to "hop-off" to visit.

26. TopView sells various sightseeing bus tours tickets and packages to tourists such as a Same Day Pass, a 24-Hour Pass, a 48-Hour Pass, a Night Tour, Attraction Passes, a Holiday Lights Tour, and a North Pole Express for families. TopView also operates sightseeing cruises around the city in conjunction with, its affiliate, Liberty Cruise. These popular sightseeing operations are an essential part of the experiences in New York City for tourists from throughout the nation and the world.

27. Additionally, TopView markets itself and sells tickets online from its own website with the "TopView" brand www.topviewnyc.com. TopView also sells tickets via websites such as Groupon and Viator by running advertisements with the distinctive "TopView" brand. TopView also markets itself on websites such as Trip Advisor and Google. TopView's website and advertisements on third-party websites all incorporate the "TopView" name and logo.

28. TopView also sells a substantial number of tickets for its double-decker tour buses in person at various locations throughout the city. These tickets are sold on the spot by authorized ticket agents for TopView. Like many other tourist companies, TopView's ticket agents try to attract customers on the street at very popular tourist locations such as the Empire State Building and Times Square.

29. In order to attract these sales on the street, TopView's ticket agents hand out official brochures, rack cards, and maps with the official "TopView" logo. TopView's ticket

agents may also hold signs advertising TopView's tours which also incorporate the official "TopView" name and logo.

30. In order to attract these sales, TopView's ticket agents hand out official brochures and maps with the official "TopView" logo. TopView's ticket agents may also hold signs advertising TopView's tours which also incorporate the official "TopView" name and logo.

31. TopView assiduously strives to maintain and protect its brand to distinguish itself from other tourist companies. In this way, TopView's customers can be assured that they are buying tickets from one of the only two legitimate double-decker tour bus companies in New York City that has been licensed and awarded bus stops by the DOT.

32. TopView's buses are all painted red with blue and white trimming and bear the distinctive red and white "TopView" logo.

33. Additionally, TopView drivers, ticket agents and other employees of TopView wear red t-shirts, jackets and hats with the "TopView" logo so that they are immediately recognizable to the public as authorized TopView employees and agents and in order to distinguish themselves from other tourist companies.

**II. Defendants' Infringement of TopView's Registered Mark As Part of Defendants' Operations.**

34. Defendant Iconic d/b/a "Ny Iconic Tours" and "NY Iconic Cruises" (collectively "Defendants") are also in the tourist sightseeing business.

35. Since July 2022 to the present, Defendants have been running illegal, unauthorized and unsafe double-decker sightseeing tour buses throughout New York City.

36. Since July 2022 to the present, Defendants have been running two or three buses on some of the same routes as TopView buses and, in so doing, making unauthorized stops at DOT Approved Bus Stops or in no standing zones. This causes confusion for the public between

TopView's legitimate double-decker sightseeing tours and Iconic's inferior, unauthorized sightseeing tours.

37. Defendants also have been knowingly and willfully copying TopView's Registered Mark in order to run their illegitimate double-decker sightseeing tour bus business and misdirect consumers away from TopView to Defendants' inferior services.

38. Indeed, Defendants' employees and agents have been masquerading as representatives of TopView and falsely informing actual and potential customers of TopView that they work for or otherwise associated with TopView.

39. Defendants' infringing activities include, but are not limited to, having their ticket agents, drivers, employees and other agents pose as TopView employees by wearing t-shirts, jackets and/or hats that infringe upon TopView's branded materials. They do so in order to deceive customers into thinking that they are selling legitimate tickets for TopView's double-decker tour buses when in fact these individuals are selling tickets for Iconic's inferior, illegitimate buses.

40. Defendants' infringing activities also include, but are not limited to, having Defendants' ticket agents, drivers, employees and other agents working for Defendants hand out TopView brochures, rack cards and/or maps that infringe upon TopView's Registered Mark. It appears that Defendants have either stolen and/or reproduced these materials with the Registered Mark and are using these infringing materials to cause confusion in the public between TopView's services and Defendants' inferior services.

41. Defendants' infringing activities also include, but are not limited to, causing Defendants' ticket agents, drivers, employees and other agents to show customers confusingly and/or substantially similar posters, brochures, rack cards and maps to those of TopView that

infringe upon TopView's Registered Mark in order to deceive customers into believing that they are buying tickets for TopView double-decker bus tours.

42. Defendants misconduct also includes causing its employees or other agents to falsely claim that they offer TopView double-decker tour bus tickets and that such tickets can be used to ride TopView's tour buses.

43. Tourists who are deceived into believing that they have purchased a TopView tour but in fact have been sold a ticket to an Iconic bus, experience far inferior services than those offered by TopView.

44. Among other things, Defendants' drivers, ticket agents and other representatives lie to passengers that board Defendants' buses and tell them that the bus will be departing soon when in fact the bus  sits for long periods of time until enough tickets have been sold so that Defendant operates its buses at or near full capacity.. This is a violation of the requirement by the New York City Department of Consumer Affairs that operators accurately disclose arrival and departure times to passengers.

45. Having been deceived by Defendants' employees and agents into thinking they have purchased a TopView tour, tourists then experience long, frustrating and unreasonable delays on Defendants' buses since, unlike TopView, these buses do not have designated DOT bus stops, published routes and timetables, and Defendants operate only two or three such buses as opposed to the more than 30 buses often operated by TopView.

46. Incredibly, when tourists complain about the service provided by Defendants, Defendants' representatives then claim that Defendants are connected with TopView, and they provide tourists the ***TopView's phone number*** for use in making complaints about Defendants' services. Since Iconic sales agents often use TopView brochures and wear TopView branded t-

shirts when selling tickets to tourists, they are purposefully misleading tourists into believing that Defendants are affiliated with TopView. This misconduct by Defendants has caused substantial damage to TopView and, indeed, the entire New York City tourism industry.

## III. Defendants' False and Misleading Advertising.

47. Defendants have also been posting advertisements on Groupon for "NY Iconic Tours" and "NY Iconic Cruises" that falsely claim that customers can "hop on" and "hop off" Iconic buses during tours of New York City. In fact, the official, published NYC Streets Permit Management System confirms that no bus stops have been assigned to Iconic by the New York Department of Transportation. Therefore, Defendants cannot offer "hop-on, hop-off" tours.

48. Defendants have also posted advertisements on Groupon claiming that Iconic operates fleets of multiple buses that travel in loops when in fact Defendants only has two operating buses. Defendants falsely represents to tourists that it is offering competitive "hop-on, hop-off" bus tours, when in fact, it is incapable of doing so.

49. Moreover, in at least three advertisements that appear on Groupon, Defendants have used the words "TopView" in a manner designed to divert customers






from TopView to Defendants' inferior Iconic Tours.

50. Defendants' advertisements for a "NY Iconic Tour" are nothing less than a fraud on the public, the impact of which has been to tarnish the reputation of the entire "hop-on, hop-off" industry in New York City.

51. Plaintiff TopView has suffered substantial damages as a result of Defendants' infringement of its Registered Mark and other misconduct.

52. Substantial numbers of consumers have been victimized by Defendants' unlawful conduct, and have lost substantial time and money as a result of Defendants' unscrupulous behavior and fraud.

**FIRST CLAIM FOR RELIEF**
**(Infringement of registered Trademark Under the Lanham Act,**
**115 U.S.C. §§ 1114(1)) and 1125(a)**

53. Plaintiff TopView repeats, realleges and reincorporates the allegations of paragraphs 1 through 52 as if set forth in their entirety herein.

54. Plaintiff TopView holds a valid mark, the TOPVIEW Mark, which is entitled to protection from infringement.

55. Defendants have used Plaintiff's TOPVIEW Mark in connection with the sale and/or advertising of Defendant's services in commerce without Plaintiff's consent.

56. Defendants' use of the TOPVIEW Mark constitutes knowing, deliberate and willful infringement of TOPVIEW's trademark rights under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a) and §1125(a) .

57. Defendants' use of Plaintiff's TOPVIEW Mark is likely to cause confusion, cause mistake, and/or deceive as to the affiliation, connection or association between Iconic and TopView, and/or as to TopView's sponsorship or approval of Iconic's goods, services and/or

commercial activities.

58. Upon information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

59. Plaintiff has been damaged by Defendants' infringement of the TOPVIEW Mark.

60. As a result of Defendants' infringement, Plaintiff is entitled to injunctive relief in the form of an order prohibiting Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof.

61. Plaintiff TopView is also entitled to recover Defendants' profits, TopView's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

62. Plaintiff TopView is also entitled to an accounting of Defendants' profits.

**SECOND CLAIM FOR RELIEF**
**(Unfair Competition and False Designation of Origin Under**
**Section 43(A) of the Lanham Act, 15 U.S.C. § 1125(A))**

63. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 62 as if set forth in their entirety herein.

64. Defendants' use of Plaintiff's TOPVIEW Mark constitutes a false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65. Defendants' use of Plaintiff's TOPVIEW Mark is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Iconic and

Plaintiff, and/or as to Plaintiff's sponsorship or approval of Iconic's goods, services and/or commercial activities.

66. Defendants' use of Plaintiff's TOPVIEW Mark has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the TOPVIEW Mark.

67. Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

68. As a result of Defendants' infringement, Plaintiff is entitled to injunctive relief in the form of an order prohibiting Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof.

69. Plaintiff is also entitled to recover Defendants' profits, Plaintiff's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

70. Plaintiff is also entitled to an accounting of Defendants' profits.

**THIRD CLAIM FOR RELIEF**
**(Unfair Competition)**
**[New York Common Law]**

71. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 70 as if set forth in their entirety herein.

72. Plaintiff has continuously used the TOPVIEW Mark in commerce since at least November 22, 2016.

73. Defendants' use of Plaintiff's TOPVIEW Mark constitutes common law trademark infringement and unfair competition under the common law of New York State.

74. Defendants' use of Plaintiff's TOPVIEW Mark is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between ICONIC and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Plaintiff's goods, services and/or commercial activities.

75. Defendants' use of Plaintiffs TOPVIEW Mark has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the TOPVIEW Mark.

76. Iconic's aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

77. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief in the form of an order prohibiting Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof.

78. Plaintiff is also entitled to recover Defendants' profits, Plaintiff's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorneys' fees under

15 U.S.C. §§ 1114, 1116 and 1117.

79. Plaintiff is also entitled to an accounting of Defendants' profits.

**FOURTH CLAIM FOR RELIEF**
**(Unlawful Deceptive Acts and Practices under**
**New York General Business Law § 349)**

80. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 79 as if set forth in their entirety herein.

81. Defendants' use of Plaintiff's TOPVIEW Mark in commerce was consumer-orientated and constitutes a violation of Section 349 of the New York General Business Law.

82. Defendants' use of Plaintiff's TOPVIEW Mark is misleading in a material way and likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant Iconic and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Defendant Iconic's goods, services and/or commercial activities.

83. Plaintiff has been injured as a result of Defendants' deceptive acts.

84. Defendants' use of Plaintiff's TOPVIEW Mark has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the TOPVIEW Mark.

85. Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

86. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief in the form of an order prohibiting Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of

Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof.

87. Plaintiff is also entitled to recover Defendants', Plaintiff's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

88. Plaintiff is also entitled to an accounting of Defendants' profits.

**FIFTH CLAIM FOR RELIEF**
**(Trademark Infringement)**
**[New York General Business Law § 133]**

89. Plaintiff repeats, realleges and reincorporates the allegations of paragraphs 1 through 88 as if set forth in their entirety herein.

90. Defendants' use of Plaintiff's TOPVIEW Mark constitutes a violation of Section 133 of the New York General Business Law.

91. Defendants' use of Plaintiff's TOPVIEW Mark is likely to cause confusion, cause mistake and/or deceive as to the affiliation, connection or association between Iconic and Plaintiff, and/or as to Plaintiff's sponsorship or approval of Iconic's goods, services and/or commercial activities.

92. Defendants' use of Plaintiff's TOPVIEW Mark has caused, and unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with the TOPVIEW Mark.

93. Defendants' aforesaid conduct has been undertaken knowingly, willfully and in bad faith.

94. As a result of Defendants' conduct, Plaintiff is entitled to injunctive relief in the form of an order prohibiting Defendant and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof.

95. Plaintiff is also entitled to recover Defendants' profits, Plaintiff's non-duplicative actual damages, enhanced profits and damages, and costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

96. Plaintiff is also entitled to an accounting of Defendants' profits.

**RELIEF SOUGHT**

**WHEREFORE**, Plaintiff Go New York Tours, Inc. respectfully prays for judgment against Defendant Tour Central Park Inc. as follows:

(I) Judgment that Defendants have:

a. Willfully infringed registered and common law trademark rights in violation of § 1114 of Title 15 in the United States Code;

b. Willfully engaged in unfair competition and/or used false designations of origin in violation of § 1125(a) of Title 15 in the United States Code;

c. Willfully infringed Plaintiff's trademark rights and engaged in unfair competition in violation of the common law of New York;

d. Willfully committed deceptive acts in violation of Section 349 of the New York General Business Law; and

e. Willfully committed acts with the intent to deceive or mislead in violation of

Case 1:22-cv-10633-JW Document 18-5 Filed 01/03/23 Page 18 of 19

Section 133 of the New York General Business Law.

(II) An injunction prohibiting Defendants and each of their respective agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith from continuing infringement, false designation of origin, unfair competition, and dilution of Plaintiff's TOPVIEW Mark, including at least from selling, offering to sell, distributing or advertising goods and/or services using Plaintiff's TOPVIEW Mark and/or colorable imitations thereof;

(III) An order directing the destruction of all advertising materials related to goods and/or services marketed by Defendants usingPlaintiff's TOPVIEW Mark and/or colorable imitations thereof including on the Internet;

(IV) An award of Defendants' profits, plaintiffs' actual damages, enhanced profits and damages, punitive damages, and costs and reasonable attorneys' fees for Defendants' trademark infringements and acts of unfair competition and unfair business practices;

(V) An accounting of Defendants's profits; and

(VI) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 16, 2022

**BARTON LLP**

By: /s/ Maurice N. Ross /s/
Maurice N. Ross
Laura-Michelle Horgan

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
lhorgan@bartonesq.com

*Attorneys for Plaintiff*
*Go New York Tours, Inc.*

Case 1:22-cv-10633-DEH-JW Document 15-5 Filed 01/03/23 Page 20 of 20

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Go New York Tours, Inc. hereby demands trial by jury on all issues raised by the Complaint.

Dated: New York, New York
December 16, 2022

**BARTON LLP**

By: /s/ Maurice N. Ross /s/
Maurice N. Ross
Laura-Michelle Horgan

711 Third Avenue, 14th Floor
New York, NY 10017
(212) 687-6262
mross@bartonesq.com
lhorgan@bartonesq.com

*Attorneys for Plaintiff*
*Go New York Tours, Inc.*