UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

GO NEW YORK TOURS, INC. d/b/a "TOPVIEW SIGHTSEEING",

Plaintiff,

–against–

AURORA TOURISM SERVICES, LLC d/b/a "NY ICONIC TOURS" AND "NY ICONIC CRUISES" and OLUWABAMISE L. JEGEDE,

Defendants.

1:22-cv-10633 (RA)(JW)

**REPLY DECLARATION OF ASEN KOSTADINOV IN FURTHER SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**ASEN KOSTADINOV**, declares under penalty of perjury that the following facts are true and correct:

1. I am the President of Plaintiff Go New York Tours Inc. which does business as "TopView Sightseeing" ("Plaintiff") or ("TopView").

2. I respectfully submit this Reply Declaration in further support of Plaintiff's motions for a temporary restraining order restraining and a preliminary injunction to be issued to Defendants Aurora Tourism Services, LLC d/b/a "NY Iconic Tours" And "NY Iconic Cruises" ("Iconic") and Oluwabamise L. Jegede ("Jegede") (collectively, "Defendants") for the relief set forth in my moving Declaration, sworn to on January 2, 2023, ECF Doc. No. 16.

3. I have reviewed the Declaration of Oluwabamise L. Jegede, the owner of Iconic, sworn to on January 30, 2023 (the "Jegede Declaration") submitted to the Court in opposition to TopView's motion. I have also reviewed the Affirmation of Iconic's attorney, Steven B. Ross, Esq., sworn to on January 30, 2023 (the "Steven Ross Affirmation"). These sworn statements contain numerous representations that are blatantly false.

4. Accordingly, Defendants have failed to refute the proof submitted by TopView in support of TopView's motion for a temporary restraining order and a preliminary injunction. The motion should be granted because the evidence establishes that Iconic is infringing TopView's registered trademark, that Iconic workers are impersonating TopView employees by wearing clothes with TopView's registered mark, handing out TopView brochures and maps with TopView's registered mark, holding up TopView maps with TopView's registered mark, and infringing TopView's registered mark on Iconic's website as well as on third party websites such as Groupon.

5. I am hereby submitting further proof that demonstrates that the Jegede Declaration and the Steven Ross Affirmation contain numerous falsehoods.

## I. **TOPVIEW'S REGISTERED MARK.**

6. For the Court's reference, I am attaching true and correct copies of TopView's brochure and maps with TopView's Registered Mark to my Reply Declaration.

7. A true and correct copy of a TopView brochure with Bates Nos. GONY000170-71, is attached hereto as **Exhibit 1**. TopView's Registered Mark appears twice at the top of the brochure.

8. TopView created numerous maps that bear its Registered Marks to depict the various tours that it offers as well as the stops on each tour. These are the DOT Approved Bus Stops referenced in my original Declaration.

9. A true and correct copy of TopView's map of its Downtown Loop, Bates No. GONY000188, is attached hereto as **Exhibit 2**. TopView's Registered Mark appears at the top left of the map.

10. A true and correct copy of TopView's map of is Brooklyn Tour Loop, Bates No. GONY000189, is attached hereto as **Exhibit 3**. TopView's Registered Mark appears at the top left of the map.

11. A true and correct copy of TopView's map of its Night Tour Loop, Bates No. GONY000191, is attached hereto as **Exhibit 4**. TopView's Registered Mark appears at the top left of the map.

12. A true and correct copy of TopView's map of its Uptown Loop, Bates No. GONY00192, is attached hereto as **Exhibit 5**. TopView's Registered Mark appears at the top left of the map.

13. In opposition to TopView's motion, both Jegede and his attorney falsely claim that Iconic never wore clothes with the TopView logo or held themselves out to be TopView employees while soliciting customers for hop on/hop off bus tours run by Iconic. (*See* Jegede Decl., ¶¶ 5-8; Steven Ross Aff., ¶¶ 44-54.) They also falsely claim that Iconic workers never handed out TopView brochures or materials and that Iconic never used TopView's Registered Mark in Iconic advertisements, brochures or flyers. (*See* Jegede Decl. ¶¶ 4-5; Steven Ross Aff., ¶ 45.) These representations also are false.

14. As stated in my original Declaration (ECF Doc. No. 16), I have personally observed Iconic's ticket agents, drivers, employees and other agents impersonating TopView employees and ticket agents by wearing clothes with TopView's Registered Mark. (*See* ¶¶ 30-31.) I included six photographs depicting Iconic workers wearing TopView branded shirts and hats in my original Declaration. (*Id.*)

15. I also stated in my original Declaration that I have observed Iconic workers holding TopView maps and handing out TopView brochures to sell tickets for Iconic bus tours and submitted photographic proof of same. (*Id*, ¶ 32.)

16. Finally, I stated that Iconic has been posting online advertisements that infringe upon TopView's Registered Mark and submitted proof of same. (*Id.*, ¶¶ 36-38.)

17. I am hereby submitting additional proof that further establish Iconic's misuse of TopView's Registered Mark and that demonstrates that Mr. Jegede's and Mr. Steven Ross's sworn statements are false.

## II. ICONIC WORKERS WEARING CLOTHING WITH TOPVIEW'S REGISTERED MARK.

18. First, with regard to their false claims that Iconic workers do not wear TopView clothing while selling Iconic tickets, I personally witnessed an Iconic ticket agent wearing a TopView shirt. In August 2022, I was on the street where ticket agents congregate to sell tickets to bus tours near 44th Street and 7th Avenue and 45th Street and 7th Avenue in Times Square. I caught an Iconic worker wearing a red shirt with the blue and white TopView logo. Since the man did not work for TopView, I approached him and asked why he was wearing a TopView shirt. The man ran away from me. I tried to follow him but he ran around a corner. I did not see him return to Times Square that day.

19. Additionally, I am hereby providing the Court with a photograph that clearly shows an Iconic worker wearing a TopView shirt and handing out TopView brochures while holding up a sign advertising Iconic bus tours. Additional photographs that show Iconic workers wearing clothing with TopView's registered logo.

20. This photograph was provided to me on July 27, 2022 by text message from Julia Conway. Ms. Conway is the Executive Vice President of North America of TopView's competitor, Big Bus. As the top executive of Big Bus in New York City, Ms. Conway shares my concern about the fact that Iconic workers are misrepresenting themselves as employees of TopView and BigBus. In fact, during a community board 5 meeting in January 2023 a representative of Big Bus pointed out to the community board that Iconic was operating illegally without a permit from a location on 7 Ave between 48 ST and 49 ST. They also pointed out that Iconic parks their buses every night overnight on the street around 30 ST and 11 Ave in New York and the buses don't seem to be serviced as that would be illegal to occur on the street. .

21. O n July 27, 2022, Ms. Conway sent me a text message and photograph of an Iconic worker wearing a TopView shirt. A true and correct copy of the text message and photograph that Ms. Conway sent to me is attached hereto as **Exhibit 6**.

22. As shown in the photograph at Exhibit 6, the man is wearing a red shirt with TopView's registered blue and white "TopView" logo. The word "Top" in white and "View" in blue is clearly visible on the red shirt that the man is wearing in the photograph. This man does not work for TopView. He is impersonating a TopView employee by wearing a shirt with the company's branded logo. [1]

[1] *See* Ex. 6, Bates No. GONY000209.

23. This photograph also shows that the man is selling tickets for Iconic's "Night Tour". In his left hand, he is holding a sign with the words "Night Tour" above a red double decker bus. The words "New York Iconic Cruises" appear at the top of the bus in large white letters.

24. The photograph also shows that the man is using a TopView brochure to sell tickets for Iconic bus tours. This is the same brochure attached hereto as Exhibit 1 with TopView's Registered Mark.

25. Therefore, contrary to Mr. Jegede's and Mr. Steven Ross's sworn statements to the Court, this photograph establishes that Iconic workers have been soliciting customers for Iconic bus tours while wearing TopView branded clothes and handing out TopView brochures.

26. Second, on July 27, 2022, I personally caught a woman handing out TopView maps while selling tickets for Iconic bus tours. This woman is depicted in several of the photographs I included in my first Declaration. She appears in the first, second and fifth photographs in Paragraph 31 of my original declaration.

27. I am also attaching a photograph that I took of this woman on July 27, 2022. A true and correct copy of this photograph is attached hereto as **Exhibit 7**.

28. This photograph shows the woman using a TopView map to solicit customers for Iconic bus tours. The map in this photograph is the same as a TopView map.

29. I am also attaching a photograph of this same woman taken by my employee, Karl Martin, on July 22, 2022. In this photograph, this same woman I saw holding a TopView map is holding up a sign advertising Iconic's Night Tour. A true and correct copy of this photograph is attached hereto as **Exhibit 8**.

30. I am also attaching a true and correct photograph of this woman standing next to a man wearing the TopView shirt with Bates No. GONY000208 taken by Jouad Mohanned on July

23, 2022as **Exhibit 9**. This is the same man wearing a TopView shirt that appears in the photograph sent to me by Julia Conway attached hereto as Exhibit 6.

31. When I encountered this woman on July 27, 2022, she saw me taking pictures of her. She then approached me and said "I know you – you are the owner of TopView" and she mistakenly called me "Hassan". She also said "I am the owner" of Iconic to me several times. I asked her why she was handing out TopView maps. She responded by saying "these aren't your maps." She also told me that if I took pictures of her, I was "going to burn in hell".

## III. ICONIC WORKERS HOLDING TOPVIEW MAPS AND HANDING OUT TOPVIEW BROCHURES.

### A. Photograph At Exhibit 10.

32. I am attaching additional photographs that prove that the representations made by Mr. Jegede and his attorney in their sworn statements that Iconic workers never handed out TopView brochures and maps or held up TopView maps are false.

33. I am attaching a true and correct copy of a photograph with Bates No. GONY000199 taken by Jennifer Li on July 22, 2022 in Times Square as **Exhibit 10**.

34. This photograph shows two men in red uniforms standing in front of a "NY ICONIC TOURS" bus. I will refer to the man on the left side of the photograph wearing a red shirt and a red cowboy hat as Iconic #1. I will refer to the man on the right side of the photograph wearing a red shirt and a red baseball cap as Iconic Worker # 2.

35. This photograph shows Iconic Worker #1 handing out TopView brochures. The stack of brochures that Iconic Worker #1 is holding are the same as the TopView brochure attached hereto as Exhibit 1 with TopView's Registered Mark. As shown in the photograph, the brochures that the Iconic Worker #1 is holding have the same red band and white space for writing underneath

the red band as TopView's brochure. *Compare* Ex. 1 with Ex. 9. This man does not work for TopView.

36. This photograph also shows Iconic Worker #2 with a stack of brochures sticking out of the right back pocket of his pants. I recognize these brochures to be BigBus brochures because they have the same red background and yellow, rounded, bubble shaped letters as Big Bus brochures. They also show the word "EXPLORE" in yellow, rounded, bubble shaped letters with a white arrow pointing downward which I recognize as language from BigBus brochures.

37. The photograph at Exhibit 9 shows that Iconic Workers #1 and #2 are posing as both TopView and Big Bus workers -- even at the same time -- in order to solicit customers on the street for Iconic bus tours.

**B. Photograph At Exhibit 11.**

38. I am hereby attaching a true and correct photograph produced with Bates No. GONY000197 taken by my employee Jouad Mohanned on July 23, 2022 as **Exhibit 11**.

39. This photograph shows two Iconic workers. The Iconic worker on the right with his back to the camera is holding a TopView brochure. This is the same brochure that is attached hereto as Exhibit 1.

**C. Photograph At Exhibit 12.**

40. I am hereby attaching a true and correct copy of a photograph produced with Bates No. GONY000203 taken by my employee Jennifer Li in July 22, 2022 as **Exhibit 12**.

41. This photograph shows two Iconic workers. I will refer to the Iconic worker on the left of the photograph as Iconic Worker #1 and the man on the right side of the photograph as Iconic Worker # 2.

42. Iconic Worker #1 has brochures sticking out of the pocket of his black pants. I recognize these brochures to be the same as the TopView brochure attached hereto as Exhibit 1. TopView's Registered Mark is visible at the top of the brochure.

43. Iconic Worker #2 in Exhibit 12 is holding a TopView map.

**D. Photograph at Exhibit 13.**

44. I am hereby attaching a true and correct copy of a photograph produced with Bates No. GONY000210 taken by my employee Karl Martin on July 22, 2022 as **Exhibit 13**.

45. This photograph shows two Iconic workers standing to the left of the steel column at the center of the photograph. I will refer to the Iconic worker on the left wearing a blue short sleeved shirt and a red backpack as Iconic Worker #1. I will refer to the Iconic worker on the right wearing a red shirt with the words "Hop On" in yellow bubble letters visible as Iconic Worker #2. The woman who identified herself to me as the owner of Iconic is standing to the right of the column holding up a sign advertising Iconic's Night Tour.

46. Iconic Worker #1 in Exhibit 13 has a stack of TopView brochures sticking out of his the right back pocket of his black pants. I recognize these brochures to be the same as the TopView brochure attached hereto as Exhibit 1. TopView's Registered Mark is visible at the top of the brochure. This man also appears to be holding a TopView map in his left hand.

**E. Photograph at Exhibit 14.**

47. I am hereby attaching a true and correct copy of a photograph produced with Bates No. GONY000198 taken by my employee Jennifer Li on July 22, 2022 as **Exhibit 14**.

48. This photograph shows an Iconic worker standing near an Iconic bus holding a TopView map. Additionally, the woman who identified herself as the owner of Iconic can be seen on the left side of the photograph.

**F. Photograph at Exhibit 15.**

49. I am hereby attaching a true and correct copy of a photograph produced with Bates No. GONY000206 taken by my employee taken by my employee Jennifer Li as **Exhibit 15**.

50. This photograph shows an Iconic worker standing in front of an Iconic bus holding a TopView map.

**G. Photograph at Exhibit 16.**

51. I am hereby attaching a true and correct copy of a photograph produced with Bates No. GONY000211 taken by my employee Jouad Mohanned on July 23, 2022 as **Exhibit 16**.

52. This photograph shows an Iconic worker wearing a red baseball cap and a red and yellow shirt with dark blue/black pants. The man is showing a potential customer a map. This photograph shows a stack of TopView brochures sticking out of his back right pocket. The brochures have the same red band and white space for writing underneath the red band as TopView's brochure. *Compare* Ex. 1 with Ex. 16. This man does not work for TopView.

**IV. ICONIC WORKERS ARE ENGAGED IN A PATTERN OF MISREPRESENTING THEMSELVES AS WORKING FOR REPUTABLE TOUR BUS COMPANIES.**

53. Numerous other photographs obtained by TopView show Iconic workers wearing clothing wearing logo of other double decker tour bus companies in New York City, BigBus and Gray Line. Incredibly, as to Gray Line, that company hasn't operated since March 2020 . It was acquired by Big Bus during the COVID pandemic. Nonetheless, Iconic workers continue to wear clothing bearing the Gray Line logo since it is recognizable to the public.

54. A true and correct copy of a photograph taken by my employee Karl Martin on July 24, 2022 showing an Iconic worker purported to be a "Ticket Agent" wearing a red vest with the blue and white "Gray Line" logo is attached hereto as **Exhibit 17**, with Bates No. GONY000207.

55. I am attaching another photograph showing an Iconic worker wearing Grey Line apparel on July 22, 2022, which was long after Gray Line stopping running buses. A true and correct copy of this photograph taken by my employee Jennifer Li on July 22, 2022 is attached hereto as **Exhibit 18**. This photograph shows two Iconic workers. The Iconic worker on the left is wearing a Grey Line vest that says "TICKET AGENT."

## V. PROOF OF CUSTOMER CONFUSION.

56. As stated in my original Declaration, Iconic is purposefully causing confusion, mistake and deceiving the public as to a supposed affiliation with TopView. (*See* ¶ 24.)

57. I am hereby attaching true and correct emails sent by a customer named Eric Borg to my company's email: support@topviewnyc.com as **Exhibits 19** and **Exhibit 20** respectively.

58. In Mr. Borg's first email (Ex. 19), he recounts an incident that occurred with persons that he describes as "TopView employees at the Night Tour stop in Times Square." (*Id.)* He said that he and his friend purchased tickets for the tour at $60.00 in cash from these individuals. Unlike TopView's procedure, Mr. Borg and his friend were not provided with a receipt. Also, it is clear that the Iconic workers lied to them about the departure time of the bus. Mr. Borg states that after they boarded the bus, they were left waiting on the bus for nearly an hour. (*Id.*) When they got off the bus and asked for a refund, the ticket sellers became aggressive and police had to intervene. (*Id.)* Since the Iconic workers had misrepresented themselves as TopView workers, the police told Mr. Borg and his friend to contact TopView and he emailed my company at support@topviewnyc.com. (*Id.*) Clearly, the Iconic workers misled the customer to believe that the operating company, responsible for this nefarious activity was TopView.

59. After TopView received Mr. Borg's complaint via email (Ex. 19), TopView contacted him right away to make it clear that the individuals that sold him the tickets and who

threatened him were not TopView employees. In his second email, Mr. Borg states: "[t]hank you for your calls today – I really appreciate how understanding and accommodating your team has been towards my friend and I after last night, ***despite your company being unfairly accused of being involved***." (Ex. 20.) (Emphasis added.) As Mr. Borg describes, one of the men told Mr. Borg and his friend were from TopView and was holding a sign, but he hid it before he said he was from TopView. (*Id.*) Also, further confirming that the persons involved in this incident were Iconic workers pretending to by TopView workers, Mr. Borg confirms in this email that the bus that he bought tickets for and boarded was "***an orange double decker bus with 'New York Iconic Tours' on the side***". (*Id.*) (Emphasis added.) He further states that the bus "left shortly after police intervened around 10:35pm." (*Id.*)

60. These emails unequivocally demonstrate the damage that Iconic's infringement of TopView's Registered Mark is causing TopView by causing actual customer confusion with Iconic's inferior tour bus service.

## VI. CONTRARY TO DEFENDANT'S REPRESENTATIONS, THE PROOF ESTABLISHES THAT ICONIC IS INFRINGING ON TOPVIEW'S REGISTERED MARKS IN ADVERTISING FOR ICONIC BUS TOURS.

61. As stated in my prior Declaration, Iconic has been posting advertisements on Groupon for "NY Iconic Tours" and "NY Iconic Cruises" that falsely claim that customers can "hop on" and "hop off" Iconic buses during tours of New York City. (*See* ¶ 37.) It is worth noting that several of the photographs attached hereto show Iconic workers wearing clothing that falsely advertises that Iconic can provide a "hop on" "hop off" tour bus experience. (*See, e.g.,* Exhibits 10, 18.)

62. Also, Mr. Jegede's claim in his Declaration in opposition to TopView's motion that "Iconic never used the 'TopView' brand or mark in our advertisements, brochures or flyers" is false. *See* Jegede Decl., ¶ 4.

**A. Webpage Screenshot at Exhibit 21.**

63. Iconic is infringing TopView's Registered Mark on its website https://newyorkiconiccruises.com. For example, I am attaching a screenshot of a page from the Iconic website that I took on or about October 29, 2022. A true and correct copy of this screenshot is annexed hereto as **Exhibit 21** and was produced with Bates No. GONY000215.

64. As shown on this page for "Experienced Guides", Iconic advertises its bus and boat tours by claiming that it is the best "top viewing" which is obviously a reference to TopView's Registered Mark. The first sentence of the first paragraph states that Iconic is the "Best Rated **Top Viewing** New York Bus and Boat Tours." (*Id.*) The fifth sentence states that Iconic is: "The Best **City Sightseeing** Double-Decker and **Top Viewing** Bus Tour in NYC. (*Id.*) These are obvious references to TopView's Registered Mark and are meant to confuse customers looking to purchase tickets on line. This is entirely confirmed by the fact that this paragraph also refers to "City Sightseeing" which was another double decker tour bus company that hasn't operated since March 2020 .

65. In fact, this page from Iconic's website shamelessly refers to both "**big bus hop on hop off topview sightseeing**." (*Id.*) (Emphasis added.) This language not only infringes on Top View's registered mark, but it falsely advertises that Iconic can provide a "hop on" "hop off" bus tour service like TopView.

**B. Webpage Screenshot at Exhibit 22.**

66. I am attaching another screenshot of a page from the Iconic website that I took on or about October 29, 2022. A true and correct copy of this screenshot is annexed hereto as **Exhibit 22** and was produced with Bates No. GONY000216.

67. Once again, this webpage from the Iconic website directly infringes on TopView's Registered Mark in that it states: "[o]ur tour gives an experience with fascinating **top view** of NYC aboard our sightseeing double decker buses." (*Id.*) (Emphasis added.)

**C. Webpage Screenshot at Exhibit 23.**

68. I am attaching another screenshot of a page from the Iconic website that my employee Jonathan Hengel took on February 2, 2023. A true and correct copy of this screenshot is annexed hereto as **Exhibit 23** and was produced with Bates No. GONY000218.

69. Once again, this webpage from the Iconic website directly infringes on TopView's Registered Mark in that it describes Iconic's Night Tour as "Night Tour New York Sightseeing Open **Top Viewing** Bus." (*Id.*)

## VII. SUMMARY.

70. For the reasons set forth herein, I respectfully request that the Court grant Plaintiff's motions for a temporary restraining order restraining and enjoining Defendants from the conduct set forth in Paragraph 1, subsections (i) – (xxi) for fourteen (14) days, and for such further period as may be provided by order of the Court; and for

(i) an expedited preliminary injunction hearing;

(ii) issuance of an order to show cause as to why a preliminary injunction should not issue permanently restraining and enjoining Defendants from engaging in any of the activities set forth in Paragraph 1, subparts (i) – (xxi);

(iii) an asset restraining order against Defendants;

(iv) order authorizing expedited discovery in this matter; and

(v) such other and further relief as the Court may deem proper.

______________________
ASEN KOSTADINOV

Sworn to before me on this
6 day of February, 2023

______________________
Notary Public

LAURA-MICHELLE HORGAN
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02HO6293595
Qualified in Westchester County
Commission Expires January 25, 2026